**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION** | **MDL 3026** |
| | **Hon. Rebecca R. Pallmeyer** |
| **This Document Relates to:**<br><br>**INMAN v. MEAD JOHNSON & COMPANY, LLC ET AL., No. 1:22-cv-03737 (N.D. Ill.)** | |

**DEFENDANTS MEAD JOHNSON & COMPANY, LLC, AND MEAD JOHNSON NUTRITION COMPANY'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND STRIKE IMMATERIAL MATTER**

# TABLE OF CONTENTS

**Page**


I. Introduction ....................................................................................................1

II. The Amended Complaint's Allegations....................................................................2

III. Rule 12(b)(6) and 12(f) Standards ........................................................................4

IV. Argument ...........................................................................................................5

A. Indiana's Choice-of-Law Rules and North Carolina's Substantive Law Apply......5

B. Plaintiff May Pursue Only Damages Recognized in North Carolina's Wrongful Death Statute and Applicable Judicial Decisions. ................................................6

1. As a Matter of Law, Plaintiff Cannot Recover for Future Economic Benefits from the Infant Under N.G. Gen. Stat. § 28A-18-2(b)(4) Because Those Damages are Too Speculative... 7

2. The Only Pain and Suffering Damages that May Be Recovered Under North Carolina's Wrongful Death Statute Are For The Decedent's Pain and Suffering.................................................... 10

C. Plaintiff's Jurisdictional Allegations Should be Stricken as Immaterial Because They Concern the Wrong Jurisdiction. ..............................................................11

V. Conclusion ..........................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of Indianapolis*,
742 F.3d 720 (7th Cir. 2014) ....................4

*Alli v. Eli Lilly & Co.*,
854 N.E.2d 372 (Ind. Ct. App. 2006)....................5, 6

*Bahl v. Talford*,
530 S.E.2d 347 (N.C. Ct. App. 2000) ....................10

*DiDonato v. Wortman*,
358 S.E.2d 489 (N.C. 1987)....................7, 8, 9, 10

*Gay v. Thompson*,
146 S.E.2d 425 (N.C. 1966)....................8, 9, 10

*Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*,
No. 20 C 0292, 2021 WL 767619 (N.D. Ill. Feb. 26, 2021)....................4

*Inman v. Mead Johnson & Co. LLC*,
No. 22-cv-03737 (N.D. Ill. Mar. 3, 2023), ECF No. 20 ....................2, 3

*King v. Novartis Pharms. Corp.*,
No. CV-07-00018, 2014 WL 2711810 (D. Ariz. June 16, 2014) ....................12

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)....................5

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998)....................12

*Livingston v. United States*,
817 F. Supp. 601 (E.D.N.C. 1993)....................11

*Looper v. Cook Inc.*,
20 F.4th 387 (7th Cir. 2021) ....................5

*Scottsdale Ins. Co. v. Sheppard*,
No. 18-CV-01406, 2019 WL 5455006 (C.D. Ill. Apr. 4, 2019) ....................11, 12

*State v. Smith*,
368 S.E.2d 33 (N.C. Ct. App. 1988) ....................7

*Stetson v. Easterling*,
161 S.E.2d 531 (N.C. 1968)....8, 10

*Stricklin v. Stefani*,
358 F. Supp. 3d 516 (W.D.N.C. 2018) ....3

*Sundstrand Corp. v. Am. Brake Shoe Co.*,
315 F.2d 273 (7th Cir. 1963) ....12

*U.S. for Use of Argyle Cut Stone Co. v. Paschen Contractors, Inc.*,
664 F. Supp. 298 (N.D. Ill. 1987) ....4

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)....5

*Ward v. McDonald*,
396 S.E.2d 337 (N.C. Ct. App. 1990) ....7

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ....4, 5, 13

**Statutes**

28 U.S.C. § 1404....12

28 U.S.C. § 1407....5, 12

N.C. Gen. Stat. § 28A-18-2....6-7, 9-11

N.C. Gen. Stat. § 99B-5 ....3

N.C. Gen. Stat. § 99B-6 ....3

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ....4

Federal Rules of Civil Procedure Rule 12(f) .... 4, 11-13

Charles Alan Wright et al., *Federal Practice and Procedure* § 1382 (4th ed. 2023)....13

Charles Alan Wright et al., *Federal Practice and Procedure* § 3844 (4th ed. 2023)....12

Defendants Mead Johnson & Company LLC and Mead Johnson Nutrition Company (together, "Mead Johnson" or "Defendants") move, pursuant to Rule12(b)(6) of the Federal Rules of Civil Procedure, to dismiss portions of the Amended Complaint dated March 3, 2023 brought by Plaintiff Alexis Inman, as Administratrix of the Estate of Daniel Windley, Deceased Minor Child ("Plaintiff") and, pursuant to Rule 12(f), to strike immaterial jurisdictional allegations from the Amended Complaint.

## I. Introduction

Plaintiff brings this action for the alleged wrongful death of her son Daniel Windley, a preterm infant who died on June 23, 2020, at just over one month of age. In response to Mead Johnson's Motion to Dismiss the original Complaint, Plaintiff amended the pleadings to cure certain fatal defects. Plaintiff is now qualified as a representative of the infant's estate as required by North Carolina law. In addition, Plaintiff now pleads statutory product liability claims in accordance with North Carolina law, and eliminated improper strict liability claims and a common law negligence claim.

Notwithstanding the corrections that were made in the amended pleading, the Amended Complaint continues to contain claims that are not cognizable under North Carolina law. Plaintiff's wrongful death claims must be dismissed to the extent that Plaintiff seeks categories of damages unavailable under North Carolina law, which governs this case. First, in wrongful death actions involving newborns, North Carolina does not permit recovery of damages for lost economic benefits, inclusive of lost income and loss of consortium damages, because these damages are inherently speculative. Second, North Carolina's wrongful death statute does not allow recovery for pain, suffering, and emotional distress felt by individuals other than the decedent.

Rule 12(b)(6) permits a Court to dismiss claims for relief not supported by the theories of liability alleged by Plaintiff. Here, in contravention of North Carolina law on damages in wrongful death actions involving newborns, Plaintiff's "Prayer for Relief" improperly includes "present and future emotional distress," "loss of consortium," "lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, loss of services" and "past, present and future loss of their child's love and companionship, care, affection, society, kindly offices, advice, consortium and friendship, pain, suffering, and emotional distress to the parents of Daniel Windley." Am. Compl. at 21. All of these improper damage claims should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

Separately, Mead Johnson asks the Court to strike, pursuant to Rule 12(f), Plaintiff's jurisdictional allegations on the ground that they are immaterial. Instead of alleging grounds for jurisdiction in the district court where the action was commenced and from which it was transferred, i.e., the Southern District of Indiana, Plaintiff's Amended Complaint alleges grounds for jurisdiction in the district court in the Eastern District of North Carolina. The Eastern District of North Carolina cannot exercise jurisdiction over a case that was not filed there and has never been pending there. Plaintiff's jurisdictional allegations concerning the Eastern District of North Carolina are thus "immaterial . . . matter" that should be stricken from the Amended Complaint.

## II. The Amended Complaint's Allegations

Plaintiff Alexis Inman, as Administratrix for the Estate of Daniel Windley, alleges claims against Mead Johnson "for the wrongful death of" her son, Daniel Windley." Am. Compl. ¶ 2, *Inman v. Mead Johnson & Co. LLC*, No. 22-cv-03737 (N.D. Ill. Mar. 3, 2023), ECF No. 20.

According to the Amended Complaint, the infant Daniel was born very prematurely, at 29 weeks gestational age, at Vidant Medical Center in Greenville, North Carolina on May 12, 2020. *Id.* ¶ 32. He weighed 1 pound, 7.6 ounces. *Id.* Plaintiff alleges that the infant was fed his mother's

own breast milk, donor breast milk, and several different Enfamil products. *Id.* ¶¶ 34-36. The infant was allegedly diagnosed with Necrotizing Enterocolitis ("NEC") on June 22, 2020. *Id.* ¶ 38. He underwent surgery on June 23, 2020, and died later that day. *Id.* ¶¶ 39-40. Plaintiff asserts that Mead Johnson's preterm formula products caused the infant's NEC and his death. *Id.* ¶ 41.

Approximately one year ago, Plaintiff filed her original summons and complaint in the United States District Court for the Southern District of Indiana. At that time, Plaintiff alleged that there was jurisdiction and venue in that district court, which is the district where Mead Johnson maintains its principal place of business. Compl. ¶¶ 2-4, *Inman v. Mead Johnson & Co. LLC*, No. 22-cv-03737 (N.D. Ill. Mar. 3, 2023), ECF No. 1. Plaintiff deleted those jurisdiction and venue allegations from the Amended Complaint filed on February 28, 2023. Instead, Plaintiff now alleges jurisdiction and venue in the federal district court in the Eastern District of North Carolina, a court that has not touched this litigation. Am. Compl. ¶¶ 6-8.

The Amended Complaint alleges two product liability claims: (i) a claim asserting inadequate design or formulation pursuant to N.C. Gen. Stat. § 99B-6 (Am. Compl. ¶¶ 42-53); and (ii) a claim asserting inadequate warning or instruction pursuant to N.C. Gen. Stat. § 99B-5 (*id.* ¶ 54-65).[1] For each of these "counts," Plaintiff generally seeks "all applicable wrongful death damages." *Id.* ¶¶ 53, 65, 68. Plaintiff's Prayer for Relief shows that the purportedly applicable wrongful death damages sought in this action include: (i) "past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, loss of consortium, and other non-economic losses"; (ii) "past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, loss of services,

[1] Plaintiffs include a purported "count" for punitive damages, *id.* ¶¶ 66-68, which is not an independent cause of action. *See Stricklin v. Stefani*, 358 F. Supp. 3d 516, 530 (W.D.N.C. 2018) ("To be awarded punitive damages, Plaintiff must first show that she is entitled to compensatory damages . . . .").

and costs related to medical or mental health treatment"; and (iii) loss of consortium "and pain, suffering, and emotional distress to the parents of Daniel Windley." *Id.* at 21.

**III. Rule 12(b)(6) and 12(f) Standards**

Even where a claim as a whole is supported by sufficient factual allegations, a court may grant a Rule 12(b)(6) motion with respect to a particular class of damages if the pleadings show that those damages are not legally cognizable. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010) (holding that non-viable damages claims are subject to a Rule 12(b)(6) motion to dismiss, not a Rule 12(f) motion to strike); *see also Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*, No. 20 C 0292, 2021 WL 767619, at *11 (N.D. Ill. Feb. 26, 2021) (citing *Whittlestone*, 618 F. 3d at 974-75) (agreeing with defendants that the statutes at issue did not allow plaintiffs to recover punitive damages and suggesting that defendants could raise that issue in a motion for judgment on the pleadings[2]); *U.S. for Use of Argyle Cut Stone Co. v. Paschen Contractors, Inc.*, 664 F. Supp. 298, 301 n.4 (N.D. Ill. 1987) (defendant's motion to strike the claims for attorney's fees in each count of the complaint "more properly should be characterized as a motion to dismiss the claims for attorney fees under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted").

Rule 12(f) allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead." *Whittlestone*, 618 F.3d at 974 (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). "Impertinent matter consists of statements that do not pertain, and are not

---

[2] "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014).

necessary, to the issues in question." *Whittlestone*, 618 F.3d at 974 (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).

## IV. Argument

Plaintiff improperly seeks damages unavailable under North Carolina's wrongful death laws. Those damages claims—for (a) lost economic benefits from the infant child; and (b) pain, suffering and emotional distress of the parents—should be dismissed for failure to state a claim upon which relief may be granted. Additionally, Plaintiff's jurisdictional allegations concerning the Eastern District of North Carolina, which is not the district where she filed her case, should be stricken under Rule 12(f) as immaterial matter.

### A. Indiana's Choice-of-Law Rules and North Carolina's Substantive Law Apply.

Ordinarily, federal courts sitting in diversity apply the choice-of-law rules of the state in which they sit when addressing state-law issues. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The transfer of a case pursuant to 28 U.S.C. § 1407 does not change the otherwise applicable choice-of-law rules, so an MDL Court applies the choice-of-law rules of the state where a case was filed, not the choice-of-law rules of the state in which the MDL Court sits. *Looper v. Cook Inc.*, 20 F.4th 387, 390 (7th Cir. 2021) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)). This case was filed in the United States District Court for the Southern District of Indiana, so Indiana's choice-of-law rules apply.

In most tort cases, Indiana's choice-of-law rules require courts to apply the substantive law of the state in which the injury occurs, i.e., "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Alli v. Eli Lilly & Co.*, 854 N.E.2d 372, 376 (Ind. Ct. App. 2006) (quoting *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004)). According to the Amended Complaint, Plaintiff's infant son Daniel was born, fed Mead Johnson formula, diagnosed with and treated for NEC, and died in North Carolina. Am. Compl. ¶¶ 1-2, 32-40.

These alleged facts show that this case involves an injury that occurred in North Carolina. *See Eli Lilly*, 854 N.E.2d at 378. As a result, the choice-of-law rules of Indiana provide that this case is governed by North Carolina's substantive law. Plaintiff appears to agree that North Carolina law applies, as the Amended Complaint cites North Carolina statutes and alleges wrongful death claims pursuant to North Carolina law. Am. Compl. ¶¶ 52, 64; *id.* at 19, 21.

**B. Plaintiff May Pursue Only Damages Recognized in North Carolina's Wrongful Death Statute and Applicable Judicial Decisions.**

North Carolina's wrongful death statute specifically enumerates the types of damages available to a plaintiff in a wrongful death action. Those damages are:

> (1) Expenses for care, treatment and hospitalization incident to the injury resulting in death;
> (2) Compensation for pain and suffering of the decedent;
> (3) The reasonable funeral expenses of the decedent;
> (4) The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected;
>> a. Net income of the decedent,
>> b. Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered,
>> c. Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered;
>
> (5) Such punitive damages as the decedent could have recovered . . . had the decedent survived, and punitive damages for wrongfully causing the death of the decedent through malice or willful or wanton conduct . . . ;
> (6) Nominal damages when the jury so finds.

N.C. Gen. Stat. § 28A-18-2(b). These damages are further limited by North Carolina case law, which holds that the categories of damages enumerated in § 28A-18-2(b)(4) will be inherently speculative and non-recoverable in actions involving an infant's wrongful death

1. *As a Matter of Law, Plaintiff Cannot Recover for Future Economic Benefits from the Infant Under N.G. Gen Stat § 28A-18-2(b)(4) Because Those Damages are Too Speculative.*

Plaintiff's damage claims, pursuant to N.C. Gen. Stat. § 28A-18-2(b)(4) for economic benefits from the deceased infant, should be dismissed as a matter of law. North Carolina law holds that this type of damage claim may not be pursued in the context of a newborn infant on the grounds that it is too speculative.

North Carolina's wrongful death statute was designed "to compensate, as fully as possible, persons for the loss of their decedent" and so "the recovery for a wrongful death action is based largely on the losses suffered by the individual beneficiaries." *Ward v. McDonald*, 396 S.E.2d 337, 340-41 (N.C. Ct. App. 1990). The wrongful death statute therefore allows plaintiffs to recover "the present monetary value of the decedent to the persons entitled to receive the damages recovered," which includes the "net income"; the "[s]ervices, protection, care and assistance"; and the "[s]ociety, companionship, comfort, guidance, kindly offices and advice" that the decedent would have provided to the beneficiaries of the wrong death action if the decedent had lived. N.C. Gen. Stat. § 28A-18-2(b)(4)(a)-(c).

To be recoverable, however, the damages specified in Section 28A-18-(2)(b)(4) "must be proved to a reasonable level of certainty, and may not be based on pure conjecture." *DiDonato v. Wortman*, 358 S.E.2d 489, 493 (N.C. 1987). "Damage awards based on sheer speculation would render the wrongful death statute punitive in its effect, which is not what the legislature intended." *Id.* at 493 (citation omitted)); *see also State v. Smith*, 368 S.E.2d 33, 38–39 (N.C. Ct. App. 1988) ("The victim's parents could only recover [under N.C. Gen. Stat. § 28A-18-2(b)(4)(a)] the amount of his income that they reasonably might have received had he lived.").

In 1966, the Supreme Court of North Carolina held that "there can be no right of action for the wrongful prenatal death of a viable child," because the then-existing wrongful death statute

restricted recovery to pecuniary losses and "there is no competent means of measuring the probable future earnings of the foetus." *Gay v. Thompson*, 146 S.E.2d 425, 428 (N.C. 1966). The court explained: "It is virtually impossible to predict whether an unborn child, but for its death, would have been capable of giving pecuniary benefit to anyone. 'None of the usual indicia such as mental and physical capabilities, personality traits, aptitudes and training of the wrongfully killed are present.'" *Id.* (quoting Comment, *Developments in the Law of Prenatal Wrongful Death*, 69 DICKINSON L. REV. 258, 267 (1965)). Because "there can be no evidence from which to infer 'pecuniary injury resulting from'" a stillbirth, *id.* at 429, the court held that the "learned judge below erred in overruling defendant's demurrer"—what is now called a motion to dismiss—and should have instead "dismissed the action." *Id.* at 431.

Two years later, the Supreme Court of North Carolina extended *Gay*'s reasoning regarding stillborn children to bar recovery of economic damages for the death of an infant who was born alive but lived "only a few months." *Stetson v. Easterling*, 161 S.E.2d 531, 533 (N.C. 1968). The *Stetson* court viewed the case as controlled by the reasoning in *Gay* even though it did not involve a stillborn child. *See id.* at 534 ("In [*Gay*] recovery was denied on the ground that 'damages may not be assessed on the basis of sheer speculation, devoid of factual substantiation.' . . . Here, as in Gay, it would be 'sheer speculation' to attempt to assess damages as of the time of the alleged negligently inflicted fatal injuries."). As in *Gay*, the *Stetson* case was decided at the motion to dismiss stage. *Id.*

In 1969, the North Carolina legislature amended the wrongful death statute to allow plaintiffs to recover additional categories of damages, such as for the pain and suffering of a decedent. *DiDonato v. Wortman*, 358 S.E.2d 489, 492 (1987). The Supreme Court of North Carolina recognized that this amendment "substantially undercut" its "earlier decision in *Gay*,"

insofar as that decision "disallowed" "[a]ctions for the wrongful death of a fetus . . . because the plaintiff could not prove" pecuniary injury. *Id.* Before 1969, inability to prove pecuniary injury "was sufficient reason to deny the action entirely" because "the wrongful death statute, as it was then construed, did not permit recovery of any other damages," but since "the damages available under the statute have been expanded, the rationale for denying the action in *Gay* has largely evaporated." *Id.* Nonetheless, *DiDonato* explicitly reaffirmed the *Gay* court's essential holding that the estate could not pursue damages for future economic benefits from the child, stating that "*the lesson of that case . . . remains valid*" and the case "was correctly decided." *Id.* at 431-32.

As a result, *DiDonato* held that, although a wrongful death action based on the death of a stillborn child could proceed, "lost income damages normally available under" N.C. Gen. Stat. § 28A-18-2(b)(4)(a) remained inherently speculative and therefore could not be recovered. *Id.* at 432; *see id.* at 431-32 ("When a child is stillborn we can know nothing about its intelligence, abilities, interests and other factors relevant to the monetary contribution it might—or might not—someday have made to the beneficiaries in a wrongful death action. A jury attempting to calculate an award for such damages would be reduced to 'sheer speculation.' (quoting *Gay*, 146 S.E.2d at 429)). Likewise, "damages normally recovered under [N.C. Gen. Stat. § 28A-18-2(b)(4)(b), (c)]—loss of services, companionship, advice and the like—will not be available in an action for the wrongful death of a viable fetus." *Id.* at 432. The court explained that "[t]he reasons" for disallowing damages claims for loss of the child's services and companionship "are the same as in the case of pecuniary loss. When a child is stillborn we simply cannot know anything about its personality and other traits relevant to what kind of companion it might have been and what kind of services it might have provided. An award of damages covering these kinds of losses would

necessarily be based on speculation rather than reason." *Id.* Like *Gay* and *Stetson*, *DiDonato* was decided at the motion to dismiss stage. 358 S.E.2d at 489.

Furthermore, North Carolina courts have, in appropriate cases, applied the reasoning of *DiDonato* to cases involving non-infant children. In *Bahl v. Talford*, 530 S.E.2d 347, 351 (N.C. Ct. App. 2000), the court found that there was no evidence that children ages eleven and sixteen, "had contributed money to their parents on any occasion in the past nor that they may have contemplated doing so in the future." Therefore, the parents could not recover "as an element of damages the amount of income [they] could reasonably have expected from the deceased" because that amount "must necessarily have been based upon 'sheer speculation'" *Id.* at 352 (quoting *DiDonato*, 358 S.E.2d at 493)).

In the present case, the Amended Complaint alleges that Daniel Windley was born at 29 weeks gestational age and weighed 1 pound, 7 ounces; was never discharged from the NICU; and died six weeks after birth. Am. Compl. ¶¶ 32-40. The pleadings show that Daniel Windley lived for less than "a few months," which was the life span of the infant in *Stetson*. Following the rule of *Stetson*, Plaintiff may not assert claims for the categories of damages under N.C. Gen. Stat. § 28A-18-2(b)(4)(a), (b), and (c), because those damages claims are inherently speculative. Accordingly, Plaintiff's claims for damages for (i) lost income: (ii) loss of services, protection, care and assistance of the decedent; and (iii) loss of society, companionship, comfort, guidance, kindly offices and advice of the decedent, should be dismissed for failure to state a claim upon which relief may be granted.

#### 2. *The Only Pain and Suffering Damages that May Be Recovered Under North Carolina's Wrongful Death Statute Are For The Decedent's Pain and Suffering.*

Plaintiff improperly asserts a damage claim for the parents' pain, suffering and emotional distress, as well as unspecified non-economic damages. Those damage claims are not recognized

under North Carolina law and should be dismissed. North Carolina's wrongful death statute allows a plaintiff to recover "[c]ompensation for pain and suffering of the decedent." N.C. Gen. Stat. § 28A-18-2(b)(2). The statute does not, however, include damages for the pain, suffering, or emotional distress of other individuals or the decedent's "loss of enjoyment of life, also known as the loss of the pleasure of life and as hedonic damages." *Livingston v. United States*, 817 F. Supp. 601, 606 (E.D.N.C. 1993). "[A]lthough the wrongful death statute is to be construed liberally to permit recovery, no authority exists allowing for damages other than those enumerated in § 28A–18–2." *Id.* at 606.

In the Prayer for Relief section of the Amended Complaint, Plaintiff seeks a variety of damages that are not recognized by the North Carolina wrongful death statute, such as: (i) "damages for . . . present, and future emotional distress, . . . and other non-economic losses sustained as a result of Defendants' conduct"; and (ii) damages for the "pain, suffering, and emotional distress to the parents of Daniel Windley." Am. Compl. at 21. To the extent that these requests extend beyond the pain and suffering of the decedent and are therefore unavailable under North Carolina law, Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted.

### C. Plaintiff's Jurisdictional Allegations Should be Stricken as Immaterial Because They Concern the Wrong Jurisdiction.

Plaintiff's allegations concerning jurisdiction in the Eastern District of North Carolina should be stricken on grounds that they are immaterial. Rule 12(f) allows a court to strike "immaterial . . . matter" in a complaint, such as irrelevant jurisdictional allegations. *See Scottsdale Ins. Co. v. Sheppard*, No. 18-CV-01406, 2019 WL 5455006, at *2 (C.D. Ill. Apr. 4, 2019) (striking allegation that subject matter jurisdiction existed under the Declaratory Judgment Act, 28 U.S.C. § 2201—which does not confer subject matter jurisdiction—because "Section 2201 is entirely

irrelevant to the jurisdictional inquiry"). The Amended Complaint alleges that jurisdiction and venue are proper in the Eastern District of North Carolina. Am. Compl. ¶¶ 6-8. However, this case was filed in the Southern District of Indiana. The case has never touched the courts in the Eastern District of North Carolina. Whether jurisdiction and venue might theoretically be proper in North Carolina, had the case been commenced there, is "entirely irrelevant to the jurisdictional inquiry." *Sheppard*, 2019 WL 5455006, at *2.

To the extent that these allegations foreshadow Plaintiff's intent to seek a transfer to North Carolina, she may not obtain such a transfer unilaterally. In addition, the MDL court may not entertain a 28 U.S.C. § 1404(a) transfer motion because 28 U.S.C. § 1407(a) "precludes [the MDL] court from granting any § 1404(a) motion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 41 n.4 (1998). The Seventh Circuit has held that only the district court in which an action is pending may order a change of venue, not another district court, much less a litigant acting unilaterally. *See Sundstrand Corp. v. Am. Brake Shoe Co.*, 315 F.2d 273, 276 (7th Cir. 1963) ("A motion for transfer under [Section 1404(a)] could only be made in the Maryland District Court, and the District Court for the Northern District of Illinois usurped the prerogative of that court."); *see also* Charles Alan Wright et al., *Federal Practice and Procedure* § 3844 (4th ed. 2023) ("Only the district court in which the action is pending can order a change of venue."). Moreover, taking into account that a plaintiff selects the jurisdiction where the case is commenced, "motions to transfer by plaintiffs should be rarely granted." *King v. Novartis Pharms. Corp.*, No. CV-07-00018, 2014 WL 2711810, at *3 (D. Ariz. June 16, 2014).

Whether jurisdiction and venue might have been proper in North Carolina, had plaintiff filed there initially, is wholly irrelevant given the current procedural posture of this case. Accordingly, the jurisdictional allegations concerning the Eastern District of North Carolina in the

Amended Complaint are both "immaterial" and "impertinent" as those terms are used in Rule 12(f) of the Federal Rules of Civil Procedure. *See Whittlestone*, 618 F.3d at 974 (parsing Rule 12(f) and defining "immaterial" and "impertinent"); *see also* Charles Alan Wright et al., *Federal Practice and Procedure* § 1382 (4th ed. 2023) ("Unnecessary jurisdictional allegations may be eliminated as immaterial . . . ."). Accordingly, those allegations, found at paragraphs 6 through 8 of the Amended Complaint, should be stricken pursuant to Rule 12(f).

## V. Conclusion

Mead Johnson respectfully requests that this Court dismiss the non-cognizable damages claims alleged in the Amended Complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) and strike the allegations found at paragraphs 6 through 8 concerning jurisdiction in the Eastern District of North Carolina as immaterial, pursuant to Rule 12(f).

By: /s/ *Elyse D. Echtman*
Anthony J. Anscombe
Rachel M. Cannon
STEPTOE & JOHNSON LLP
227 West Monroe, Suite 4700
Chicago, IL 60606
312.577.1270
312.577.1370 (fax)
aanscombe@steptoe.com
rcannon@steptoe.com

Elyse D. Echtman
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
212.506.3900
eechtman@steptoe.com

*Attorneys for Defendants Mead Johnson & Co., LLC and Mead Johnson Nutrition Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 14th day of March, 2023, a true and correct copy of the foregoing Motion to Dismiss was served on all counsel of record via e-mail.

*/s/ Elyse D. Echtman*
Elyse D. Echtman