IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>**This Document Relates to:**<br><br>**INMAN v. MEAD JOHNSON & COMPANY, LLC ET AL., No. 1:22-cv-03737 (N.D. Ill.)** | MDL 3026<br><br>Hon. Rebecca R. Pallmeyer |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Alexis Inman, as Administratrix of the Estate of Daniel Windley, Deceased Minor Plaintiff ("Plaintiff") respectfully responds to Defendants Mead Johnson & Company LLC's and Mead Johnson Nutrition Company's ("Defendants" or "Mead Johnson") motion to dismiss ("MTD"). As set out below, Mead Johnson's Motion to Dismiss Plaintiff's claim for lost income benefits in connection with the tragic death of her infant child should be denied because North Carolina's wrongful death statute provides for such damages; and. no North Carolina court has found that a parent of a very young child is precluded from pursuing such damages. Mead Johnson's request to strike certain allegations relating to this case's connection to North Carolina

should also be denied because Mead Johnson fails to meet the standard for striking such allegations, and the motion serves no practical purpose.[1]

## I. Factual Background

Plaintiff's Amended Complaint (Dkt. 20) sets forth the circumstances of the tragic death of Baby Daniel, who was born prematurely at Vidant Medical Center in Greenville, North Carolina on May 12, 2020 to Alexis Inman and Daniel Windley. After being fed Defendants' Enfamil Pregestimil, Enfamil Nutramigen, Enfamil Premature Infant Formula, and Enfamil Human Milk Fortifier, which are all cow's milk-based products in the NICU at the hospital, Baby Daniel suffered Necrotizing Enterocolitis, which caused compartment syndrome. Baby Daniel's swollen intestines compressed his lungs and compromised circulation to his legs. He was forced to undergo an emergent exploratory laparotomy, during which it was discovered that his entire small bowel and sections of his colon were affected by Necrotizing Enterocolitis. Although he survived the initial surgery, Baby Daniel ultimately succumbed to his extensive injuries and died of Necrotizing Enterocolitis on June 23, 2020. In June 2022, Plaintiff brought this case against Mead Johnson, asserting numerous claims under North Carolina law, and sought the full range of remedies available to her under North Carolina law.

## II. Argument

### A. Plaintiffs may pursue lost income damages.

Mead Johnson asks this Court to hold, for the first time since the passage of North Carolina's current wrongful death statute, that the parents of a non-stillborn baby may not recover reasonably expected economic benefits after the wrongful death of their child. To be clear,

---

[1] Plaintiff agrees that North Carolina substantive law applies. Plaintiff is also not pursuing, under N.C. Gen. Stat. § 28A-18-2(b)(2) compensation for Baby Daniel's parents' pain and suffering. *See* MTD at 10-11

Defendant seeks to improperly expand the breadth of the wrongful death statute to preclude parents of living children, who then pass, to recover damages under this statute. The Court should reject this request.

North Carolina's wrongful death statute specifically provides that a plaintiff may recover, among other damages, "compensation for the loss of the reasonably expected; (a) Net income of the decedent, (b) Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled the damages recovered, (c) Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered." N.C. Gen. Stat. § 28A-18-2(b)(4). Nowhere does this statute, nor the case law interpreting it since its passage, categorically prohibit the recovery of future economic benefits after the death of an infant child. Such a holding would represent new law in North Carolina.

Mead Johnson recites the history that preceded this statute, including two cases, *Gay v. Thompson*, 146 S.E.2d 425, 428 (N.C. 1966), and *Stetson v. Easterling*, 161 S.E.2d 531, 533 (N.C. 1968), which barred the recovery of economic damages for the death of a stillborn child and an infant who lived "only a few months," respectively. Mead Johnson also acknowledges, as it must, that the North Carolina legislature amended the wrongful death statute in 1969, only one year *after* the *Stetson* decision, expanding the damages available to plaintiffs bringing claims under the statute. *See DiDonato v. Wortman*, 358 S.E.2d 489, 493 (N.C. 1987). In *DiDinato*, the North Carolina Supreme Court examined the new statute's express provision for pecuniary damages and noted that the new statute "substantially undercut the rationale for this Court's holding in *Gay*." *Id.* at 492. Against that background, the *DiDonato* court was presented with a specific question and answered it narrowly: "We therefore hold that lost income damages normally available under

- 3 -

2774820.1

N.C.G.S. § 28A–18–2(b)(4)a cannot be recovered in an action for the wrongful death of a stillborn child." *Id.* at 494.

The *DiDonato* court went no further than that, and in the 35 years since, no North Carolina court has gone further. To the contrary, courts have avoided the bright line that Mead Johnson asks this Court to draw for the first time, and instead have provided the plaintiffs the opportunity to present evidence to prove the "reasonably expected" damages that the North Carolina legislature provided for after *Gay* and *Stetson*. For example, in *Fox-Kirk v. Hannon*, 542 S.E.2d 346, 351 (2001), the Court of Appeals affirmed the trial court's decision to allow the parents of a child who died at two years and eleven months to present evidence of future damages. *Id.* at 351. The Court acknowledged "proof of future damages involves a significant degree of speculation," but specifically declined to find what Mead Johnson asks this Court to find – that such future damages in cases involving young children are not available as a matter of law. *Id.*

Mead Johnson's contention that lost income and other economic damages are "inherently speculative" (MTD at 1) is not a justification for dismissal on the pleadings; in fact, North Carolina courts have repeatedly recognized that "[*s]ome* speculation" in these cases "must always be necessary." *Stutts*, 380 S.E.2d at 418. The standard requires some evidence of reasonable expectations of income and support, not the contrary, as Defendant improperly suggests. Consistent with *Fox-Kirk*, courts in North Carolina consistently allow parents to present evidence of their own reasonable expectations of income and support. *See, e.g., Stutts v. Adair*, 94 N.C. App. 227, 239, 380 S.E.2d 411, 418 (1989) ("In our view, the trial judge should enjoy wide latitude, in a case such as this one, to admit any evidence tending to demonstrate the parents' expectations to the child's income."). Parents were given that opportunity even in the cases cited by Mead Johnson, as in *Bahl v. Talford*, 530 S.E.2d 347 (N.C. Ct. App. 2000) (cited at 11), where the Court

2774820.1

disallowed income damages not as a matter of law, but because the plaintiff had failed to prove his case at trial. *See id.* at 351 (noting that the "current statute emphasizes loss of the income 'reasonably expected' to be received by beneficiaries"); *see also State v. Smith*, 368 S.E.2d 33, 38-39 (N.C. Ct. App. 1988) (cited at 7) (reviewing restitution awarded in criminal proceeding and noting failure to present "evidence" of reasonable expectation to receive income).

No case entirely cuts off a parent's opportunity to present evidence of her reasonable expectations of income and support of a young child since the passage of this statute, as Mead Johnson attempts to do here. The Court should decline Mead Johnson's invitation to make new North Carolina law.

**B.      The Court should deny Mead Johnson's motion to strike.**

Mead Johnson moves to strike certain jurisdictional allegations concerning this case's connection to North Carolina but fails to provide a sufficient basis for the motion. It is black letter law that such motions are "viewed with disfavor and are infrequently granted." Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed.); *see also, e.g., Meridian Sec. Ins. Co. v. Roberts*, No. 19-CV-00884-NJR, 2020 WL 1065465, at *1 (S.D. Ill. Mar. 5, 2020) ("As a general rule, motions to strike are disfavored and rarely granted because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic."). Although Defendant notably omits it from its statement of the Rule 12(f) standard, Mead Johnson must show that it would be prejudiced by the inclusion of the challenged allegations. *See, e.g., Smith v. S. Ill. Riverboat/Casino Cruises, Inc.*, No. 06CV4069 JPG, 2006 WL 2539756, at *1 (S.D. Ill. Aug. 30, 2006). It does not even attempt to demonstrate such prejudice here.

Rather than demonstrate actual prejudice, Mead Johnson complains that the factual allegations concerning North Carolina may "foreshadow Plaintiff's intent to seek a transfer to North Carolina." MTD at 12. Plaintiffs have not made that motion, which can be brought "at any

time." *Marsh v. Sun Host, Inc.*, No. 87 C 7843, 1989 WL 8619, at *1 (N.D. Ill. Feb. 1, 1989). When and if such a motion is made, the Court will not be asked to decide it on the pleadings alone. In such a motion the Court will be presented with facts "[b]y affidavit, deposition, stipulation or other relevant documents." *Moore v. AT & T Latin Am. Corp.*, 177 F. Supp. 2d 785, 790 (N.D. Ill. 2001) (quotation and citation omitted). Mead Johnson cannot and does not provide a single case where a court has granted a motion to strike based on speculation about a future motion to transfer. This is because there is no conceivable prejudice to a party from such possibility, and there is no prejudice to Mead Johnson in the inclusion of these allegations in Plaintiff's Amended Complaint before this Court.

### III.     Conclusion

For the foregoing reasons, it is respectfully submitted that Mead Johnson's motion to dismiss and motion to strike should be denied.

| | |
|---|---|
| Dated:  April 4, 2023 | Respectfully submitted, |
| | */s/ Jose M. Rojas* |
| | Jose M. Rojas<br>Stephen M. Reck<br>**Levin, Rojas, Camassar, & Reck, LLC**<br>391 Norwich-Westerly Rd<br>North Stonington, CT 06359<br>Phone: 860-535-4040<br>Facsimile: 860-535-4040<br>jose@LRCR.law<br>attorneyreck@yahoo.com |