## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *In Re Abbott Laboratories, et al., Preterm Infant Nutrition Products Liability Litigation* | MDL No. 3026<br><br>Master Docket No. 1:22-cv-00071<br><br>Hon. Rebecca R. Pallmeyer |
| **This Document Relates to:**<br>*Inman v. Mead Johnson & Company, LLC et al.,* | Cause No. 1:22-cv-03737 |

## MEAD JOHNSON NUTRITION COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 1

LEGAL STANDARD.................................................................................................................... 2

I.      There is no evidence that Mead Johnson Nutrition Company is a manufacturer or
seller of the relevant products. ........................................................................................... 4

II.     Mead Johnson Nutrition Company may not be held legally responsible for Mead
Johnson & Company LLC's actions. .................................................................................. 6

III.    Mead Johnson Nutrition Company joins Mead Johnson & Company LLC's
motion for summary judgment.......................................................................................... 8

CONCLUSION.............................................................................................................................. 8

## **TABLE OF AUTHORITIES**

**Cases**            **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...........................................................................................................2

*Auto. Fin. Corp. v. Joliet Motors, Inc.*,
761 F. Supp. 2d 789 (N.D. Ill. 2011) .................................................................................6

*Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*,
328 F.3d 309 (7th Cir. 2003) .............................................................................................3

*In re Broiler Chicken Antitrust Litig.*,
702 F. Supp. 3d 635 (N.D. Ill. 2023) .................................................................................5

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...........................................................................................................2

*Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*,
No. 16 CV 06113, 2017 WL 4269005 (N.D. Ill. Sep. 26, 2017)........................................5

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
680 F. Supp. 3d 1011 (N.D. Ill. 2023) ...............................................................................2

*Dunderdale v. United Airlines, Inc.*,
807 F.3d 849 (7th Cir. 2015) .............................................................................................2

*Goodman v. Nat. Sec. Agency, Inc.*,
621 F.3d 651 (7th Cir. 2010) ..........................................................................................3, 5

*Hottenroth v. Village of Slinger*,
388 F.3d 1015 (7th Cir. 2004) ...........................................................................................2

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
529 F.3d 371 (7th Cir. 2008) .............................................................................................7

*Sanchez v. Jeffreys*,
No. 19 CV 4143, 2023 WL 6604540 (N.D. Ill. Oct. 10, 2023) .........................................5

*Scale Effect Co. v. Baron Chocolatier, Inc.*,
No. 19-CV-1599, 2025 WL 903789 (N.D. Ill. Mar. 25, 2025)......................................3, 6

*Wayland v. OSF Healthcare Sys.*,
94 F.4th 654 (7th Cir. 2024) ..............................................................................................2

*Wilson v. Comtrust LLC*,
249 F. Supp. 2d 993 (N.D. Ill. 2003) .................................................................................7

**Statutes**

N.C. Gen. Stat. § 1D-15 ...............................................................................................................3

N.C. Gen. Stat. § 99 B-5 .............................................................................................................3

N.C. Gen. Stat. § 99 B-6 .............................................................................................................3

N.C. Gen. Stat. § 99B-1 ..............................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 56(a) ...................................................................................................................2

## INTRODUCTION

Plaintiff Alexis Inman sued two different companies: Mead Johnson & Company, LLC ("MJC LLC") and Mead Johnson Nutrition Company ("MJNC"). Of those, it is MJC LLC—not MJNC—that designs, manufactures, and sells the infant nutrition products at issue in this lawsuit. MJNC, by contrast, is a separate corporate entity with no specific involvement in the infant formula business. Summary judgment is therefore appropriate as to MJNC for two reasons. ***First***, Plaintiff can offer no record evidence that MJNC engaged in any of the conduct—*e.g.*, designing, manufacturing, or selling preterm infant formula—alleged in the operative complaint or required under the North Carolina product liability statute. ***Second***, even if MJC LLC engaged in negligent conduct as Plaintiff alleges, Plaintiff has failed to provide any evidence that justifies piercing the corporate veil and holding MJNC liable for those actions. Alternatively, the Court should grant summary judgment as to MJNC for all of the reasons set forth in Defendant MJC LLC's motion for summary judgment.

## BACKGROUND

Plaintiff's claims against Mead Johnson & Company, LLC and Mead Johnson Nutrition concern MJC LLC's preterm infant nutrition products, specifically its formula and fortifiers. *See generally* Pl.'s First Am. Compl, ECF No. 20 (Mar. 3, 2023). MJC LLC designs, manufactures, and makes available to hospitals those infant formula products. SOF ¶¶ 1, 7, 9; Ex. A, MJC LLC's Responses to Pl.'s Second Requests for Admission, General Objections at 1 ("Only Mead Johnson & Company, LLC has any role in the production and distribution of infant formula."). MJNC—MJC LLC's corporate parent—does not. Rather, "Mead Johnson Nutrition Company is a holding company that has no knowledge relevant to this litigation." SOF ¶¶ 5–6; Ex. B, MJNC's Responses to Pl.'s Second Requests for Admission, General Objections at 1. MJC LLC is and was at the time of D.W.'s birth the only Mead Johnson entity that contracts with hospitals—including

the hospitals involved in this case—to make available premature infant formula products for use in the NICU. SOF ¶ 4; *see* Ex. C, MJ_MDL3026_Inman_0000001 (Products and Price List for Vidant Health, as contracted with MJC LLC); Ex. D, MJ_MDL3026_Inman_0000012 (General Purchasing Agreement between Premier Purchasing Partners LP and MJC LLC[1]). Put simply, MJNC is a corporate entity with no relevance to Plaintiff's claims, and against whom Plaintiff has failed to develop any evidence.

## LEGAL STANDARD

"Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (citation omitted) (issues of fact are material if they are outcome determinative).

While the moving party has the initial burden of establishing that there is no genuine dispute as to any material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 680 F. Supp. 3d 1011, 1020 (N.D. Ill. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at 250 (1986)). Once the moving party has met its burden, "the non-moving party cannot rely on mere conclusions

---

[1] Premier Purchasing Partners LP is a group purchasing organization ("GPO"), and MJC LLC sold products to Vidant Health through "the Supplier Agreement for Infant Formula by and between Premier and Mead Johnson & Company, LLC ('Supplier')." SOF ¶ 4; Ex. D, MJ_MDL3026_Inman_0000003.

and allegations to concoct factual issues." *Scale Effect Co. v. Baron Chocolatier, Inc.*, No. 19-CV-1599, 2025 WL 903789, at *1 (N.D. Ill. Mar. 25, 2025) (citing *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003)). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## ARGUMENT

Plaintiff brings two product liability claims against MJNC and MJC LLC: inadequate design or formulation under N.C. Gen. Stat. § 99B-6 and inadequate warning or instruction under N.C. Gen. Stat. §99B-5.[2] *See* Pl.'s First Am. Compl, ECF No. 20 ¶¶ 42-65 (Mar. 3, 2023). Section 99B-6 addresses the liability of the "manufacturer" of a product, and § 99B-5 addresses the liability for a "manufacturer or seller." Section 99B-1 further defines those terms:

> (2) "Manufacturer" means a person or entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its sale to a user or consumer, including a seller owned in whole or significant part by the manufacturer or a seller owning the manufacturer in whole or significant part.
>
> . . .
>
> (4) "Seller" includes a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale or for use or consumption. "Seller" also includes a lessor or bailor engaged in the business of leasing or bailment of a product.

N.C. Gen. Stat. § 99B-1. Plaintiff's complaint accordingly brings claims against "Defendants, Mead Johnson & Company, LLC, and Mead Johnson Nutrition Company ('Mead Johnson')," Pl.'s

---

[2] While Plaintiff purports to bring a third count, for "willful and/or wanton conduct by Mead Johnson (Punitive Damages)," the Court has already found that "North Carolina's punitive damages statute does not provide an independent cause of action." Memorandum Opinion & Order, ECF No. 25, at 2 (July 17, 2023).

First Am. Compl. ¶ 3, on the basis that "*Mead Johnson* manufactures, designs, formulates, prepares, tests, provides instructions for, markets, labels, packages, sells, and/or places into the stream of commerce in all fifty states, including Enfamil Pregestimil, Nutramigen, Enfamil Premature Formula, and Enfamil Human Milk Fortifier, premature infant formula and premature infant milk fortifier under the Enfamil brand name." *Id.* ¶ 3 (emphasis added). Because there is no evidence in the record that MJNC meets either statutory definition or engages in the activities alleged in Plaintiff's complaint, including during the period surrounding D.W.'s birth and subsequent injury, the claims fail.

**I.    There is no evidence that Mead Johnson Nutrition Company is a manufacturer or seller of the relevant products.**

To succeed on a claim against MJNC under either of the two statutory sections that Plaintiff invokes in her Complaint, she must establish that MJNC is the manufacturer or seller of the Enfamil Premature Formula products alleged to have caused D.W.'s injuries. *See Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961, 978 (E.D.N.C. 2015) ("[I]f defendant is not the [product's] "manufacturer" that determination reasonably moots the Estate's defective design claim . . . ." (citing N.C. Gen. Stat. §§ 99B–1(3) & 99B–6)); *see also Neihage v. Kittrell Auto Parts, Inc.*, 255 S.E.2d 315 (N.C. Ct. App. 1979) (finding summary judgment appropriate on negligent design claim where plaintiff proffered no evidence that defendant had manufactured relevant product). As to MJNC, Plaintiff cannot—and has not— made a *prima facie* showing of such liability.

There is no evidence in the record that MJNC "designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its sale to a user or consumer," or that it is "engaged in the business of selling a product." N.C. Gen. Stat. § 99B–1(2), (4). Indeed, the evidence is to the contrary. MJC LLC is the only Mead Johnson entity that submitted as the manufacturer information regarding the design and manufacturing of Enfamil

4

Premature Formula—the formula that Plaintiff alleges caused D.W.'s NEC—to the FDA. *See* SOF ¶¶ 1, 7; Ex. E, Excerpt from FDA Submission 2016. MJC LLC is the only Mead Johnson entity that contracted with the hospital that fed D.W. formula. SOF ¶ 4. MJC LLC's name, and not MJNC's name, appeared on the label of the products fed to D.W. *See* SOF ¶ 9; Ex. F, MJ_MDL3026_0002141 (24 calorie/oz formulation); Ex. G, MJ_MDL3026_0002139 (30 calorie/oz formulation).

Lumping both defendants together, as Plaintiff does, is not sufficient to establish liability against MJNC. *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, No. 16 CV 06113, 2017 WL 4269005, at *3 (N.D. Ill. Sep. 26, 2017) ("It is not enough to allege conspiracy, or concerted action, without differentiating between the participants."). Rather, Plaintiff must "supply evidence tending to show that" each defendant is liable. *Sanchez v. Jeffreys*, No. 19 CV 4143, 2023 WL 6604540, at *6 (N.D. Ill. Oct. 10, 2023); *In re Broiler Chicken Antitrust Litig.*, 702 F. Supp. 3d 635, 661 (N.D. Ill. 2023) (noting that Plaintiffs must meet their burden of proof "with respect to each individual defendant"); *Goodman*, 621 F.3d at 654.

Where, as here, "the complaint tells us nothing about the individual actions of, or the relationships between, the various . . . defendants," *Chamberlain Grp., Inc.*, 2017 WL 4269005 at *3, the statute defines what a manufacturer and seller must do, and the record is devoid of evidence of MJNC engaging in any of these actions, summary judgment is appropriate. MJNC has no involvement in the manufacture, sale, or distribution of infant formula—nor does Plaintiff allege a single fact or provide a single piece of evidence establishing that MJNC engaged in such conduct. *See generally* SOF ¶¶ 4-7; Ex. B, General Objections at 1. Summary judgment should therefore be entered in MJNC's favor.

## II. Mead Johnson Nutrition Company may not be held legally responsible for Mead Johnson & Company LLC's actions.

MJC LLC and MJNC are separate legal entities, both of which are organized under the laws of Delaware. The state of an entity's incorporation or organization generally governs the question of whether courts may pierce the corporate veil.[3] *See Secon Serv. Sys. v. St. Joseph Bank & Trust Co.*, 855 F.2d 406, 413 (7th Cir. 1988). In Delaware, "[t]o state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Eagle Air Transport, Inc. v. Nat'l Aerotech Aviation Delaware, Inc.*, 75 F. Supp. 3d 883, 896 (N.D. Ill. 2014) (quoting *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 496 (Del. 2003)). "Under Delaware law, courts 'will disregard the corporate form only in the exceptional case.'" *Id.* (quoting *Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088–VCP, 2008 WL 5352063, at *5 (Del.Ch. Dec. 23, 2008) (unpublished)).

Federal courts, including those in this district, "undertake the task of piercing the corporate veil reluctantly." *Auto. Fin. Corp. v. Joliet Motors, Inc.*, 761 F. Supp. 2d 789, 792 (N.D. Ill. 2011). "Accordingly, a plaintiff moving to pierce a corporate veil has a substantial burden." *Scale Effect Co.*, 2025 WL 903789, at *10 (N.D. Ill. Mar. 25, 2025) (citation omitted). Indeed, a corporation's veil of limited liability will be pierced only when there is "such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist[,]" and when "adherence to the fiction of separate corporate existence would sanction a fraud

---

[3] The Court need not conduct a further choice-of-law analysis on this point because any of the potentially applicable state laws point to the same result. *Wachovia Securities, LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012) (noting that in "diversity cases, we look to the substantive law of the state in which the district court sits" and that "Illinois applies the law of the state of incorporation for veil piercing claims"); *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345, 348-49 (M.D.N.C.1995) (predicting that North Carolina would apply the law of the state of incorporation); *Chapel Ridge Investments, L.L.C. v. Petland Leaseholding Co.*, 2013 WL 6331095, at *2 (N.D. Ind. Dec. 4, 2013) (predicting that Indiana would apply the law of the state of incorporation).

or promote injustice." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378–79 (7th Cir. 2008) (alteration in original) (citations omitted). Moreover, there is an "arguably more-rigorous standard" for piercing the corporate veil of an LLC to reach its members because there are "few formal requirements on LLCs as compared to business corporations." *Cement-Lock v. Gas Tech. Inst.*, 523 F. Supp. 2d 827, 846 (N.D. Ill. 2007) (Pallmeyer, J.) (quoting 2–33 Business Organizations with Tax Planning § 33.06 (2007)).

Here, Plaintiff has no evidence whatsoever that MJNC created MJC LLC as a "sham entity" designed to defraud creditors or that MJC LLC and MJNC operate as a singular, unified corporate entity whose existence would even remotely constitute fraud or injustice. On the contrary, the facts are clear: as noted above, MJC LLC designs, manufactures, and sells infant formulas. MJNC, in contrast, is MJC LLC's sole member—a distinct entity separate from MJC LLC and uninvolved and unimplicated in the facts underlying this lawsuit. *See* SOF ¶ 5; Ex. B, General Objections at 1 ("Mead Johnson Nutrition Company is a holding company that has no knowledge relevant to this litigation.").

MJC LLC uses the phrase "Mead Johnson Nutrition" as a trademark to refer to its nutrition business, but that is insufficient to justify such a dramatic step as piercing the corporate veil. *See Wilson v. Comtrust LLC*, 249 F. Supp. 2d 993, 998 (N.D. Ill. 2003) (failing to pierce the corporate veil where the "only evidence that even slightly suggests that the Court should pierce the corporate veil is that Comtrust and CPC share the same letterhead and office space").[4] Indeed, as a matter of public record, it is MJC LLC, not MJNC, that owns the "MEAD JOHNSON NUTRITION" trademark. SOF ¶ 8; Ex. H, Copy of Trademark Ownership. Plaintiff has not established (and

---

[4] For example, while the trademarked logo "Mead Johnson Nutrition" appears on the labels of the various formula products D.W. received, the copyright and distribution information clearly says "Mead Johnson & Company, LLC" only. SOF ¶ 9.

cannot establish) facts sufficient to pierce the corporate veil, and summary judgment should be granted as to all claims against MJNC.

### III. Mead Johnson Nutrition Company joins Mead Johnson & Company LLC's motion for summary judgment.

MJNC joins each of the arguments made by MJC LLC in MJC LLC's Motion for Summary Judgment, which deal with deficiencies in Plaintiff's claims unrelated to the corporate identity of Defendants. Plaintiff pled her claims collectively against both Mead Johnson defendants. *See* Defendant MJC LLC's Motion for Summary Judgment and Memorandum of Law in Support; *see also* Pl.'s First Am. Compl., ECF No. 20 (Mar. 3, 2023) ¶¶ 42–65 (pleading counts without distinction between MJC LLC and MJNC). Summary judgment should be granted on all claims pled against MJNC for the same reasons argued by MJC LLC.

## CONCLUSION

Accordingly, for the reasons laid out above, MJNC respectfully requests that the Court grant summary judgment on all of Plaintiff's claims.


Dated: August 25, 2025                            Respectfully submitted,

                                                  */s/ Emily S. Ullman*

                                                  Paul W. Schmidt
                                                  Phyllis A. Jones
                                                  Emily S. Ullman
                                                  Elizabeth T. Fouhey
                                                  Sumner T. Truax
                                                  **COVINGTON & BURLING LLP**
                                                  One CityCenter
                                                  850 Tenth Street NW
                                                  Washington, DC 20001
                                                  202-662-6000
                                                  pschmidt@cov.com
                                                  pajones@cov.com
                                                  eullman@cov.com

8

efouhey@cov.com
struax@cov.com

Rachel M. Cannon
Anthony J. Anscombe
**STEPTOE LLP**
227 West Monroe, Suite 4700
Chicago, IL 60606
312.577.1270
rcannon@steptoe.com
aanscombe@steptoe.com

*Counsel for Defendant Mead Johnson*
*Nutrition Company*