**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| *In Re Abbott Laboratories, et al., Preterm Infant Nutrition Products Liability Litigation* | MDL No. 3026<br><br>Master Docket No. 1:22-cv-00071<br><br>Hon. Rebecca R. Pallmeyer |
| **This Document Relates to:**<br>*Inman v. Mead Johnson & Company, LLC et al.* | Cause No. 1:22-cv-03737 |

**MEAD JOHNSON NUTRITION COMPANY'S MEMORANDUM OF LAW**
**IN REPLY TO PLAINTIFF'S BRIEF OPPOSING SUMMARY JUDGMENT**

**TABLE OF CONTENTS**


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 1

I. Plaintiff's Theory of Direct Liability Fails on the Law and the Facts. ............................. 1

A. There Is No Evidence that MJNC is a "Manufacturer" or "Seller" as Required by North Carolina Law. ........................................................................ 2

B. Plaintiff Misconstrues the Law to Improperly Conflate Legally and Operationally Distinct Entities. ..................................................................... 8

II. Plaintiff Has Conceded that No Evidence Exists to Pierce the Corporate Veil. ............... 10

III. On the Merits, Mead Johnson Nutrition Company Joins Mead Johnson & Company LLC's Motion for Summary Judgment. ........................................................ 11

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allgood v. CNA Int'l, Inc.*,
No. 23 CV 462, 2025 WL 2532619 (N.D. Ill. Sept. 3, 2025) ... 8

*Ass'n Cas. Ins. Co. v. Allstate Ins. Co.*,
245 F.R.D. 245 (S.D. Miss. 2007) ... 10

*Bolden v. Barnes*,
No. 12-cv-5291, 2013 WL 5737359 (N.D. Ill. Oct. 22, 2013) ... 3

*Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*,
No. 16 CV 06113, 2017 WL 4269005 (N.D. Ill. Sep. 26, 2017) ... 9, 10

*Davis v. G.N. Mortg. Corp.*,
396 F.3d 869 (7th Cir. 2005) ... 7

*Kenall Mfg. Co. v. Cooper Lighting, LLC*,
354 F. Supp. 3d 877 (N.D. Ill. 2018) ... 11

*Kuiper v. Shoei Safety Helmet Corp.*,
563 S.E.2d 100 (N.C. Ct. App. 2002) ... 8

*Morrison v. Sears, Roebuck & Co.*,
341 S.E.2d 40, 41 (N.C. Ct. App. 1986) ... 8

*Neihage v. Kittrell Auto Parts, Inc.*,
255 S.E.2d 315 (N.C. Ct. App. 1979) ... 2, 8, 9

*Nichols v. Michigan City Plant Plan. Dep't*,
755 F.3d 594 (7th Cir. 2014) ... 11

*Nipponkoa Ins. Co., Ltd. v. NDK Crystal, Inc.*,
2015 WL 14080852 (N.D. Ill. Feb. 17, 2015) ... 11

*Packman v. Chicago Trib. Co.*,
267 F.3d 628 (7th Cir. 2001) ... 7

*Sparks v. Oxy-Health, LLC*,
134 F. Supp. 3d 961 (E.D.N.C. 2015) ... 2, 8, 9

**Statutes**

N.C. Gen. Stat. § 99B–1 ... 2, 8, 9

N.C. Gen. Stat. § 99B–5 ... 2

N.C. Gen. Stat. § 99B–6 ........................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 56 ..................................................................................................................11

Local Rule 56.1 .........................................................................................................................3

## INTRODUCTION

Plaintiff sued two different companies: Mead Johnson & Company, LLC ("MJC LLC") and Mead Johnson Nutrition Company ("MJNC"), but she has yet to provide any evidence that shows MJNC had ***any*** involvement with the manufacture or sale of preterm infant formula, as required by North Carolina law. The record evidence establishes that MJNC is a holding company with no employees, no involvement in the marketing, manufacture, and sale of preterm infant formula, and no involvement in the facts underlying this litigation that would make MJNC an appropriate defendant. After ignoring the distinction between MJC LLC and MJNC for more than three years of litigation, in opposition, Plaintiff offers completely irrelevant evidence—SEC filings, MJC LLC employee CVs, patent applications, and an ethics policy—that have ***no bearing*** on the central question under North Carolina law: whether MJNC is a "manufacturer" or a "seller" of a product. Plaintiff also simply ignores MJNC's argument that Plaintiff has failed to pierce the corporate veil (thereby conceding the issue), and otherwise fails to meaningfully engage with the legal framework and proof required to establish liability of a holding company. As a result, MJNC is not a proper party to this litigation, and the Court should grant MJNC's motion for summary judgment.

## ARGUMENT

### I. Plaintiff's Theory of Direct Liability Fails on the Law and the Facts.

Plaintiff's assertions that MJNC can be held directly liable for Daniel's injuries fail on two fronts. *First*, Plaintiff offers a hodgepodge of nonresponsive evidence that predates the birth and alleged injuries underlying this litigation, has no bearing on whether MJNC manufactures or sells any product, and utterly fails to controvert MJNC's evidence. *Second*, Plaintiff's legal arguments misapply the law in order to inappropriately conflate MJNC with its subsidiary, MJC LLC.

### A. There Is No Evidence that MJNC is a "Manufacturer" or "Seller" as Required by North Carolina Law.

As set forth in MJNC's brief, and as Plaintiff herself acknowledged, to establish direct liability for claims of inadequate design or formulation and inadequate warning or instruction under North Carolina law, Plaintiff must prove that the defendant is a "manufacturer" or "seller" of the product that purportedly caused her injuries. *See* N.C. Gen. Stat. §§ 99B-5, 99B-6; MJNC Br. at 3; Opp. at 6; *see also Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961, 978 (E.D.N.C. 2015) ("[I]f defendant is not the [product's] 'manufacturer,' that determination reasonably moots the Estate's defective design claim . . . ." (citing N.C. Gen. Stat. §§ 99B–1(3) & 99B–6)); *Neihage v. Kittrell Auto Parts, Inc.*, 255 S.E.2d 315 (N.C. Ct. App. 1979) (finding summary judgment appropriate on negligent design claim where plaintiff proffered no evidence that defendant had manufactured relevant product). Facing an absence of record evidence that MJNC "designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its sale to a consumer," N.C. Gen. Stat. § 99B-1(2), or is "engaged in the business of selling a product," *id.* § 99B-1(4), Plaintiff offers MJNC's filings with the U.S. Securities and Exchange Commission ("SEC"), the curricula vitae ("CVs") of MJC LLC employees, patent applications, and an ethics policy. None of these documents create a dispute of material fact about MJNC's role.

Plaintiff begins by quoting out of context various excerpts of MJNC's 2015 and 2016 10-K filings with the SEC. *See* Plaintiff's Statement of Additional Facts ("PSOAF") ¶¶ 1–10, 12–19. MJNC does not dispute that, for instance, these filings state that "Mead Johnson Nutrition Company is a global leader in pediatric nutrition," has "developed or improved many breakthrough or category-defining products," "design[s] specialty formulas," and "operate[s] in-house production facilities . . . around the world." *See* MJNC Response to PSOAF ¶¶ 1–2, 5–6.

However, Plaintiff fails to acknowledge the filings' clear preface: "In this Annual Report on Form 10-K, we refer to Mead Johnson Nutrition Company ***and its subsidiaries*** as 'the Company,' 'MJN,' 'Mead Johnson,' 'we' or 'us.'" *See* MJNC Response to PSOAF ¶¶ 1–3 (emphasis supplied); Childers Decl., Ex. 1 at 3; Childers Decl., Ex. 2 at 4. And Plaintiff cites to no language that would suggest MJNC, as opposed to a subsidiary, manufactures or sells the preterm EPF products at issue *in this case*. Rather, to the extent the filing discusses the manufacture, sale, or distribution of pediatric nutrition products in the United States, such activity is and has always been conducted by MJNC's subsidiary, MJC LLC. *See* MJNC's SOF ¶ 5 (stating that MJNC is the sole member of MJC LLC); MJNC Response to PSOAF ¶ 1 (citing Ex. I, Sept. 10, 2024 A. Lannert Dep. Tr. 64:7–22 ("Q. Under Item 1, Business, Our Company, this represents that Mead Johnson Nutrition Company is a global leader in pediatric nutrition, with approximately 3.7 billion in net sales for the year ended December 31, 2016. Do you see that? A. Yes. Q. Is that correct, an accurate statement? . . . [A.] It is correct in that 'we' throughout the 10-K, it refers to Mead Johnson Nutrition Company and its subsidiaries.").[1]

Similarly, as purported evidence of MJNC's involvement in the manufacture and sale of infant formula products, Plaintiff cites an ethics policy noted as last approved on February 7, 2015, titled "Interactions w/Healthcare Professionals & Entities," which states that "Mead Johnson Nutrition Company ***and its subsidiaries*** ('MJN' or 'Company') are committed to the ethical promotion and distribution of nutritional products for infants, children, and adults." PSOAF ¶ 24

[1] Any new evidentiary material in MJNC's response to Plaintiff's Statement of Additional Facts is "responsive to the asserted fact to which the response is made," pursuant to Local Rule 56.1(e)(2), and may be relied upon in MJNC's Reply. *See, e.g.*, *Bolden v. Barnes*, No. 12-cv-5291, 2013 WL 5737359, at *2 (N.D. Ill. Oct. 22, 2013) ("[F]acts may be considered on summary judgment only if they are presented in a compliant Local Rule 56.1 statement or response.").

(citing Childers Decl. Ex. 5, at P1.590.3) (emphasis added). This is a true statement. However, it has no probative value as to whether MJNC is a manufacturer or seller under North Carolina law. As that same page elaborates—and Plaintiff's own quote indicates—"[t]his Policy is applicable to all employees and contractors of the Company," which includes MJNC subsidiaries like MJC LLC, "including any contractors, agents, or other third parties acting on behalf of MJN in interactions with HCPs or healthcare entities." *Id.* ¶ 25. Again, the policy fails to even suggest that MJNC itself is a manufacturer or seller.

Plaintiff knows this. As a corporate subsidiary of MJNC, MJC LLC is the only Mead Johnson entity that submitted information to the FDA regarding the design and manufacturing of Enfamil Premature Formula as the product's manufacturer—the formula that Plaintiff alleges caused Daniel's NEC—to the FDA. *See* MJNC's SOF ¶¶ 1, 7; Ex. E, Excerpt from FDA Submission 2016. MJC LLC is the only Mead Johnson entity that contracted with the hospital that fed Daniel formula. MJNC's SOF ¶ 4. Likewise, MJC LLC's name, and not MJNC's name, appeared on the label of the products fed to Daniel. *See* MJNC's SOF ¶ 9; Ex. F, MJ_MDL3026_0002141 (24 calorie/oz formulation); Ex. G, MJ_MDL3026_0002139 (30 calorie/oz formulation). Moreover, MJC LLC is, and was at the time of Daniel's birth, the only Mead Johnson entity that contracts with hospitals—including the hospital involved in this case—to make available premature infant formula products for use in the NICU. SOF ¶ 4; *see* Ex. C, MJ_MDL3026_Inman_0000001 (Products and Price List for Vidant Health, as contracted with MJC LLC); Ex. D, MJ_MDL3026_Inman_0000012 (General Purchasing Agreement between Premier Purchasing Partners LP and MJC LLC[2]). This is because MJC LLC handles all U.S.

[2] Premier Purchasing Partners LP is a group purchasing organization ("GPO"), and MJC LLC sold products to Vidant Health through "the Supplier Agreement for Infant Formula by and between Premier and Mead Johnson & Company, LLC ('Supplier')." SOF ¶ 4; Ex. D, (continued…)

nutrition business, including the marketing, manufacture, and sale of preterm infant formula. SOF ¶¶ 1, 7, 9; Ex. A, MJC LLC's Responses to Pl.'s Second Requests for Admission, General Objections at 1 ("Only Mead Johnson & Company, LLC has any role in the production and distribution of infant formula."). Mead Johnson Nutrition Company did not even have any budget of its own for independent operations.[3]

Even were this Court to assume based on this evidence (contrary to the clear textual indications otherwise) that MJNC manufactured or sold infant formula in 2015 or 2016, that would not create a dispute of material fact with regard to the infant formula that Plaintiff's infant consumed in 2020. As Plaintiff's own statement of additional material facts notes, MJNC was purchased in a merger by non-defendant Reckitt Benckiser in 2017. PSOAF ¶ 20. Plaintiff provides no evidence to support any assertion that her interpretation of MJNC's role based on its 2015 and 2016 regulatory filings and policies (which is counter to the overwhelming evidence

---

MJ_MDL3026_Inman_0000003.

[3] *See* MJNC Response to PSOAF ¶ 1 (citing Ex. I, Sept. 10, 2024 A. Lannert Dep. Tr. 64:7–22 ("[Q.] Did Mead Johnson Nutrition Company have any budget of its own for any independent operation? A. No, not to my knowledge. As I mentioned previously, they held our external debt and paid dividends and taxes, so my understanding is the treasury department would have had some method for projecting the cash outflows for debt payments and things like that. But there were no opera -- operations to the degree there were sales or, you know, products being marketed. It was just more of a treasury function.")); *see also* MJNC Response to PSOAF ¶ 1 (citing Ex. I, Sept. 10, 2024 A. Lannert Dep. Tr. 19:12–23 ("[Q.] [I]t is your understanding, again, that Mead Johnson Nutrition Company has never had any employees whatsoever? A. Correct. That's my understanding."); *id.* 20:15–25 ("[A.] Mead Johnson Nutrition Company was our entity that was formed as a holding company for all the operating entities that rolled up into it. It was there to file publicly required filings, like SEC filings. It held our external debt. It held our common stock and paid any dividends. But it again, at no time had employees or sales operations. It also paid our corporate income tax."); *id.* Tr. 22:8–14 ("Q. And Mead Johnson & Company, LLC, was, to your understanding as a corporate representative of those entities, the operational company within the United States on behalf of Mead Johnson. Correct? A. Correct."); *id.* Tr. 17:6–8 ("[A.] My understanding is that Mead Johnson Nutrition Company has never had employees under it."); *id.* Tr. 39:16–19 ("[A.] Mead Johnson Nutrition Company doesn't directly market or sell products. It's the owner of Mead Johnson & Company, LLC.")).

described in the prior paragraph) accurately describes its activities as of 2020, when Daniel was born.

Plaintiff secondarily points to curricula vitae from corporate witnesses that list professional experience purportedly on behalf of Mead Johnson Nutrition Company. PSOAF ¶¶ 30–32. These CVs are irrelevant for several reasons:

- Plaintiff's brief incorrectly describes these CVs. None list "Mead Johnson Nutrition Company" as an employer. Rather, they list "Mead Johnson Nutrition" Ex. 12 at 1, "Mead Johnson Nutrition, a subsidiary of Reckitt," Ex. 12 at 16, and/or "Mead Johnson Nutritionals," *id.* at 5. *See* MJNC Response to PSOAF ¶ 30 (citing Ex. 12).

- General descriptions of employees working for "Mead Johnson Nutrition" cannot be taken as an assertion that these individuals were employees of Mead Johnson Nutrition Company—including because many of them list their employment with Mead Johnson Nutrition as beginning ***prior*** to MJNC's existence as a corporate entity in 2009. *Compare, e.g.*, MJNC Response to PSOAF ¶ 30 (citing Ex. 12 (Alvey CV listing "Mead Johnson Nutrition" work beginning in 2005)), *with* Ex. I, Sept. 10, 2024 A. Lannert Dep. Tr. 30:6–24 (describing MJC LLC's ownership by Bristol-Meyers Squibb until MJNC was created as a publicly traded company in 2009). Indeed, given that MJC LLC owns the "Mead Johnson Nutrition" trademark, it is unsurprising that United States employees may elect to list that recognizable brand on their CVs. *See* SOF ¶ 8.

- By contrast, MJNC's corporate representative confirmed MJNC ***does not have employees*** and that Mead Johnson United States employees are employed by MJC LLC. *See* MJNC Response to PSOAF ¶ 1 (citing Ex. I, Lannert Tr. 124:3–14 ("Q. What entity are Colin Rudolph and Kelli Talley employed by? A. They would have been employed by Mead Johnson & Company, LLC. Q. In your understanding, did Mead Johnson Nutrition & Company – excuse me. Did Mead Johnson Nutrition Company have a position of vice president, global medical affairs, chief medical officer or director of pediatric nutrition institute, medical affairs? A. No. It had no employees.")).

- Nor, even if the Court found that these CVs created a dispute of material fact as to whether MJNC engaged in ***some*** activities relevant to the infant formula market, do they establish that it manufactured and sold preterm infant formula consumed by Daniel. For example, Plaintiff cites the CV of Mr. Alvey for his work as a "[p]rocess development engineer for innovative spray drying production process for infant formula significantly changing the supply chain setup," Opp. at 7—but there is no evidence that Daniel ever ingested a powdered formula (that is, a formula that would go through "spray drying"). To the contrary, the preterm formulas

identified on the contract between MJC, LLC and Vidant are all sold in bottles of 2 fluid ounces—they are liquids. Ex. C at 1.

- Plaintiff deposed all of these employees and had the opportunity to probe their employment history, including which entity they worked for during which periods, but she did not do so. Mere speculation at the stage of the lawsuit cannot create a material issue of fact that can defeat summary judgment. *See, e.g.*, *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 637 (7th Cir. 2001) ("[P]laintiff's speculation is 'not a sufficient defense to a summary judgment motion.'" (citation omitted)); *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 886 (7th Cir. 2005) ("[I]t remains a mystery why [plaintiffs] failed to acquire an affidavit or deposition testimony" from two witnesses "whose alleged statements are necessary to support the plaintiffs'" theory and "plaintiffs had ample time . . . to secure their testimony . . . .").

In short, how a research or marketing employee lists his or her professional experience on a CV has no bearing on whether MJNC engaged in the "manufacture" or "sale" of any product, let alone the relevant products at the relevant time.[4]

Finally, Plaintiff cites patent applications and registered patents for which MJNC is listed as the applicant or assignee, arguing that this "shows that [MJNC] was involved in the infant formula market." Opp. at 7–8. These patents cannot create any disputes of material fact, because Plaintiff does not demonstrate that the innovations involved in each (or any) of the patents held by MJNC relate to any of the products consumed by Daniel. For example, the first patent cited by Plaintiff addresses the use of human milk oligosaccharides in formula. *See* Childers Decl. Ex. 3 at 1-24. Yet no human milk oligosaccharides are identified as an ingredient on the label for the EPF 24 High Protein or EPF 30 consumed by Daniel in 2020. *See* MJNC MSJ Ex. F (ECF

[4] Although not mentioned in her Opposition, Plaintiff included as exhibits MJNC's annual registration filings with the State of Georgia Secretary of State. *See* Childers Decl., Ex. 8. It is unclear what bearing these filings have whatsoever on MJNC's purported role in the "manufacture" or "sale" of any product. To the extent that Plaintiff refers to Robert Cleveland's stated role as Chief Executive Officer of MJNC in the filings, Plaintiff again misses the point—one can be an executive officer and not an employee of an entity, and Robert Cleveland was employed and compensated by MJC LLC. *See* MJNC Response to PSOAF ¶ 27 (citing Ex. I, Sept. 10, 2024 A. Lannert Dep. Tr. 18:10–17 (explaining that the CEO and CFO of MJNC were employed and compensated by MJC LLC)).

No. 55-6). But moreover, ownership of patent rights or "involvement in the infant formula market" writ large does inherently not make MJNC a manufacturer—including to the extent that manufacturing includes design—or seller of the infant formula ingested by Daniel. *See* N.C. Gen. Stat. § 99B-1(2) ("'Manufacturer' means a person or entity who ***designs, assembles, fabricates, produces, constructs or otherwise prepares a product*** . . . ." (emphasis supplied)); *id.* § 99B-1(4) ("'Seller' includes . . . any individual or entity ***engaged in the business of selling a product*** . . . ." (emphasis supplied)); *Kuiper v. Shoei Safety Helmet Corp.*, 563 S.E.2d 100 (N.C. Ct. App. 2002) ("[I]t is clear from the evidence in the record that defendant did not engage in the activities of either a manufacturer nor seller as those terms are referenced pursuant to N.C.G.S. § 99B-1(2) and (4)."); *cf. Allgood v. CNA Int'l, Inc.*, No. 23 CV 462, 2025 WL 2532619, at *4 (N.D. Ill. Sept. 3, 2025) ("We note that the imprinting of Sears' trademark in the shoe does not make Sears the manufacturer of the shoe." (quoting *Morrison v. Sears, Roebuck & Co.*, 341 S.E.2d 40, 41 (N.C. Ct. App. 1986), *rev'd on other grounds*, 354 S.E.2d 495 (N.C. 1987))). In other words, Plaintiff has not shown how these patents have any probative value as to whether MJNC itself has engaged in the manufacture or sale of a relevant product—EPF 24 High Protein or EPF —under North Carolina law.

In sum, Plaintiff's evidence fails to generate a dispute of fact as to MJNC's lack of involvement in the manufacture or sale of any product. MJNC's motion for summary judgment should be granted.

### B. Plaintiff Misconstrues the Law to Improperly Conflate Legally and Operationally Distinct Entities.

In her opposition, Plaintiff takes issue with three of MJNC's cited authorities and presents one new, entirely inapposite case. None of these legal contentions have merit.

***First***, Plaintiff takes issue with *Sparks* and *Neihage*, which MJNC cited for the simple

proposition that a North Carolina products liability claim requires a plaintiff to prove that the defendant is a "manufacturer" or "seller" of a product. *See* MJNC Br. at 4 (citing *Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961, 978 (E.D.N.C. 2015) ("[I]f defendant is not the [product's] 'manufacturer' that determination reasonably moots the Estate's defective design claim . . . ." (citing N.C. Gen. Stat. §§ 99B–1(3) & 99B–6)); *Neihage v. Kittrell Auto Parts, Inc.*, 255 S.E.2d 315 (N.C. Ct. App. 1979) (finding summary judgment appropriate on negligent design claim where plaintiff proffered no evidence that defendant had manufactured relevant product)).

In *Sparks*, the court held that the "defendant's conduct still falls outside of the scope of 'design' as that term is used in" N.C. Gen. Stat. § 99B–1(2) because "[t]he power to accept or reject changes made by a third party, without more, falls short of the degree of autonomy necessary to constitute the ability to 'design.' The evidence shows that defendant did not have unrestrained power to decide on the [product's] look and function." *Sparks*, 134 F. Supp. 3d at 979. In *Neihage*, the Court of Appeals of North Carolina affirmed dismissal of a purported defendant-manufacturer where the plaintiff conceded that another company had manufactured the at-issue product, and the "plaintiff failed to raise an issue as to any material fact" with controverting evidence. *See Neihage*, 255 S.E.2d at 317–18. These cases underscore why MJNC cannot be directly liable under North Carolina law where the uncontroverted evidence demonstrates MJNC has not engaged as a "manufacturer" or a "seller" of a product. Rather than provide any form of responsive counterproof, Plaintiff has instead attempted to generate a dispute of fact by mischaracterizing obviously irrelevant evidence, as discussed above.

***Second***, Plaintiff takes issue with *Chamberlain*, which MJNC cited for the proposition that Plaintiff may not simply lump defendants together without differentiating between their activities. MJNC Br. at 5 (citing *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, No. 16 CV 06113,

2017 WL 4269005, at *3 (N.D. Ill. Sep. 26, 2017) ("It is not enough to allege conspiracy, or concerted action, without differentiating between the participants.")). Curiously, Plaintiff's quotations from *Chamberlain* highlight exactly what Plaintiff has done here. *See* Opp. at 10. In *Chamberlain*, the court noted that "the complaint's allegations almost never distinguish between 'the defendants' or 'TTI' and appears at times purposefully vague about which corporate defendants took which actions . . . ." *Chamberlain Grp., Inc.*, 2017 WL 4269005, at *3. Throughout Plaintiff's opposition, she has notably elided the distinctions between MJNC, MJC LLC, and other MJNC subsidiaries, even where the evidence (e.g., SEC filings and Mead Johnson policy) distinguish between those different entities. *See, e.g.*, MJNC Response to PSOAF ¶¶ 1, 22.

***Third***, in *Association Casualty*—which Plaintiff contends is a "nearly identical situation to this one"—two individual defendants argued they were not proper defendants because they did not serve as representatives of a board, whose conduct was at issue. *Ass'n Cas. Ins. Co. v. Allstate Ins. Co.*, 245 F.R.D. 245, 250 (S.D. Miss. 2007). The court found that a genuine issue of material fact remained as to whether the insurer-defendants, as opposed to their respective representatives, were members of the board under a Mississippi statute that governed such board appointments. *See id.* Plaintiff provides no plausible explanation of how the facts of that case apply to this one, instead saying that *Association Casualty* instructs that courts should consider a defendant's involvement, not its identity. Yet, as explained throughout this brief, Plaintiff has offered no evidence to establish MJNC's involvement in the manufacture or sale of a product.

## II. Plaintiff Has Conceded that No Evidence Exists to Pierce the Corporate Veil.

Plaintiff has elected to concede MJNC's alternative argument that Plaintiff cannot pierce the corporate veil between MJNC and MJC LLC—two separate and distinct legal entities, relying exclusively on an argument that MJNC is directly liable. *See* Opp. at 1 n.1 ("[T]here is no need to

attempt to pierce the corporate veil in order to show that MJNC is a proper party in this case."). As a result, Plaintiff has waived any opposition to MJNC's arguments that no record evidence exists meriting attribution of MJC LLC's conduct to MJNC. *See* MJNC Br. at 6–8; *Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). Thus, the Court should grant summary judgment in MJNC's favor insofar as Plaintiff cannot pierce the corporate veil to impute MJC LLC's conduct to MJNC. *See* Fed. R. Civ. P. 56(a); *Nipponkoa Ins. Co., Ltd. v. NDK Crystal, Inc.*, 2015 WL 14080852, at *10 (N.D. Ill. Feb. 17, 2015) ("[T]he court grants [defendant's] motion for summary judgment as to affirmative defenses 2 and 3" where plaintiff "failed to substantively respond to [defendant's] arguments," thus "waiv[ing] any such argument."); *Kenall Mfg. Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877, 894 (N.D. Ill. 2018) ("[T]he Supreme Court specifically provided for partial summary judgment on less than an entire cause of action or defense in Rule 56 . . . ." (citation omitted)).

## III. On the Merits, Mead Johnson Nutrition Company Joins Mead Johnson & Company LLC's Motion for Summary Judgment.

As to the other elements of Plaintiff's claims, MJNC joins each of the arguments made by MJC LLC in MJC LLC's Motion for Summary Judgment and Reply to Plaintiff's Opposition to MJC LLC's Motion for Summary Judgment, which deal with deficiencies in Plaintiff's claims unrelated to the corporate identity of Defendants. Plaintiff pled her claims collectively against both Mead Johnson defendants. *See* Defendant MJC LLC's Motion for Summary Judgment and Memorandum of Law in Support; *see also* Pl.'s First Am. Compl, ECF No. 20 (Mar. 3, 2023) ¶¶ 42–65 (pleading counts without distinction between MJC LLC and MJNC). Summary

judgment should be granted on all claims pled against MJNC for the same reasons argued by MJC LLC.

## CONCLUSION

Accordingly, for the reasons laid out above and in MJNC's Motion for Summary Judgment and Memorandum in Support thereof, as well as the reasons established in MJC LLC's Motion for Summary Judgment and Memorandum in Support thereof, MJNC respectfully requests that the Court grant summary judgment in MJNC's favor as to all of Plaintiff's claims.

Dated: November 17, 2025

Respectfully submitted,

*/s/ Emily Ullman*

Phyllis A. Jones
Emily S. Ullman
Elizabeth T. Fouhey
Sumner T. Truax
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
202-662-6000
pajones@cov.com
eullman@cov.com
efouhey@cov.com
struax@cov.com

Paul W. Schmidt
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001-2170
212-841-1015
pschmidt@cov.com

Rachel M. Cannon
Anthony J. Anscombe
**STEPTOE LLP**
227 West Monroe, Suite 4700
Chicago, IL 60606
312.577.1270
rcannon@steptoe.com

aanscombe@steptoe.com

*Counsel for Defendant Mead Johnson Nutrition Company*