**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION** | **MDL NO. 3026** |
| | **Master Docket No. 22 C 00071** |
| **This Document Relates to:** | **Hon. Rebecca R. Pallmeyer** |
| ***Inman v. Mead Johnson & Company, LLC, et al.*** | |
| **Case No. 22 C 3737** | |

## MEMORANDUM OPINION AND ORDER

This case concerns allegations that Mead Johnson's Enfamil Premature Formula—an infant formula designed for premature babies—caused Plaintiff Alexis Inman's infant son to develop necrotizing enterocolitis ("NEC"). Inman argues that Mead Johnson ran afoul of North Carolina law by (1) failing to properly warn Daniel's treatment providers of the risk of NEC from the formula, and (2) by negligently failing to adopt a safer formulation of formula that utilized lactose as the principal carbohydrate. The court discussed these theories in depth in its prior summary judgment order. The court assumes the parties' familiarity with the factual and procedural background of this case.

With trial quickly approaching, Mead Johnson has filed a "motion on preemption" [172] which argues that Inman's defective-design claim is preempted by federal law in light of the Supreme Court's recent opinion in *Monsanto Co. v. Durnell*, 146 S.Ct. 2001 (2026). The court construes this as a motion to dismiss. As explained below, this motion is denied without prejudice.

## DISCUSSION

Mead Johnson argues that Plaintiff's defective-design claim as preempted by the Infant Formula Act ("IFA") and its implementing regulations. For reasons explained here, the court concludes Plaintiff's claims are not preempted.

"Federal statutes preempt state law through the Supremacy Clause." *Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey*, 172 F.4th 976, 985 (7th Cir. 2026). State law must yield to federal law in cases of express preemption—that is, where Congress has enacted "a statute containing an express preemption provision." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Preemption can also be implied in cases without an express preemption clause, but where federal and state laws are in conflict. Implied preemption comes in two flavors: field and conflict. *Casey*, 172 F.4th at 985. Field preemption occurs when "Congress has so completely preempted a particular area that no room remains for any state regulation and the complaint would be necessarily federal in character." *Id.* (quoting *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 787 (7th Cir. 2002)). Conflict preemption, on the other hand, occurs when "compliance with both federal and state regulations is a physical impossibility" or when "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 984 (7th Cir. 2012) (quoting *Arizona*, 567 U.S. at 399).

Invoking conflict preemption, Mead Johnson argues that adopting Inman's proposed lactose reformulation would violate the IFA. Some context: The IFA designates infant formulas as "foods" that are regulated by the Food and Drug Administration ("FDA"). *See* 21 U.S.C. § 321(z). The IFA and its implementing regulations impose a number of requirements on formula manufacturers; they must (1) adhere to minimum nutrition standards, (2) follow certain "quality factors and manufacturing practices," and (3) follow "registration and notification requirements" imposed by the FDA. *Ferry v. Mead Johnson & Co., LLC*, 514 F. Supp. 3d 418, 433–34 (D. Conn. 2021). Some infant formulas designed specifically for preterm infants are called "exempt" formulas—the parties agree the formula at issue here falls within this bucket. (Opp'n [184] at 2; Reply [194] at 3.) At least 90 days prior to introducing a "new" exempt formula onto the market, the manufacturer must "submit the formula's (1) label, (2) "complete quantitative formulation," and (3) "a detailed description of the medical conditions for which the infant formula is represented."

*Ferry,* 514 F. Supp 3d at 434.*.* Older formulas qualify as "new," and thus must adhere to this 90-day notice requirement, whenever they undergo a "major change, in processing or formulation, from a current or any previous formulation." 21 U.S.C. § 350a(c)(2). After receiving this information from the manufacturer, the FDA "will review" the information, and "will so notify" the formula manufacturer if it "concludes that additional or modified . . . nutrient[] or labeling requirements are needed." (Mot. [172] at 2–3.)

Mead argues that adopting Inman's proposed lactose reformulation would "clearly constitute a 'major change' requiring new FDA review," triggering the 90-day notice requirement. (*Id.*) For purposes of this ruling, the court agrees that adopting lactose as the principal carbohydrate in Enfamil Premature Formula would be a "major change" in the formula. But Mead goes one step further, and contends that the 90-day notice requirement, and risk of subsequent action by the FDA, means that Mead Johnson's adoption of the lactose reformulation would violate federal law. (*Id.* at 3–4 (quoting *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011)).) This appears to be an overstatement. Unlike prescription drugs or devices, which must be *approved* by the FDA prior to being placed into interstate commerce, infant formula manufacturers are required only to provide *notification* before going on the market. True, the FDA can take actions if it believes the lactose reformulation is unsafe. Mead claims that the agency can "impose additional conditions on, or modify requirements for, the quality control procedures, nutrient specifications, or labeling of an infant formula, or withdraw a product's exempt status." (Reply [194] at 5; *see also* Rudolph Dep. [78-39] at 189:3–14 (describing the process of "changing a formula" as a "really substantial endeavor"). But the mere specter that the FDA might disfavor a potential lactose reformulation is no basis for a holding of preemption, as there is no indication that the FDA would disapprove or impose any additional requirements on Mead. *See Ferry*, 514 F. Supp. 3d at 418 (refusing to hold Connecticut-law design-defect claims against Mead Johnson as preempted by the IFA).

For support, Mead Johnson relies primarily on the Supreme Court's recent decision in *Monsanto Co. v. Durnell*, 146 S.Ct. 2001 (2026). But that case differs from this one for several reasons. First, it interprets the Federal Insecticide, Fungicide, and Rodenticide Act ("FINFA"), a statute that includes an express preemption clause. The IFA includes no such clause. Second, *Durnell* invalidated a state-law *failure to warn* claim in a case where federal law *required* Monsanto to use a particular label approved by federal regulators. In contrast, Mead wields *Durnell* against Inman's *defective design* claim, in a case where the FDA need not approve a design before it goes on the market. *Durnell* thus does not disrupt this court's conclusions on preemption.

The court notes that this preemption argument is new both to this case, and to the MDL as a whole. It is unclear why Mead Johnson did not raise this argument at the summary judgment stage—the company appears to have made an identical argument in the *Ferry* case several years ago, and it is unclear why Mead did not revisit it since then. Regardless, the court declines to dismiss Plaintiff's design-defect claim on the eve of trial for the reasons explained here. If Mead Johnson is able to identify a basis for its apparent belief, identified at oral argument, that the FDA's involvement in infant formula is effectively the same as the pre-market approval process that prescription drugs undergo, it may renew this argument at in an applicable post-trial motion. *See Ferry*, 514 F. Supp. 3d at 442 (leaving open this possibility); *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 487–93 (2013); *PLIVA*, 564 U.S. at 623–26.

ENTER:

Dated: August 5, 2026

REBECCA R. PALLMEYER
United States District Judge

4