**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| *In Re Abbott Laboratories, et al., Preterm Infant Nutrition Products Liability Litigation* | MDL No. 3026<br><br>Master Docket No. 1:22-cv-00071<br><br>Hon. Rebecca R. Pallmeyer |
| **This Document Relates to:**<br>*Inman v. Mead Johnson & Company, LLC et al.*, | Cause No. 1:22-cv-03737 |

**MEAD JOHNSON'S MOTION TO STRIKE THE TESTIMONY OF DR. LOGAN SPECTOR**

Defendant Mead Johnson & Company, LLC ("Mead Johnson") hereby moves to strike the testimony of Dr. Logan Spector, Plaintiff's general causation expert. While Plaintiff has played excerpts from the deposition of Dr. Rebecca Betensky, the statistical expert on whose work Dr. Spector bases his own, that testimony does not place her opinion into evidence. Dr. Spector was, of course, free to *rely* on and draw inferences from Dr. Betensky's meta-analyses. But he was not able to *present* her actual results to the jury, which are hearsay absent her testimony, and his ability to rely on them does not solve that evidentiary problem. Plaintiff could have elicited Dr. Betensky's meta-analyses via live (or deposition) testimony, as she did include those results in her expert report (and so could testify about them at trial), but Plaintiff has not done so.

Mead Johnson raised these issues both before Plaintiff elected to call Dr. Betensky by designated deposition testimony and before Dr. Spector took the stand, and the Court should now act and strike Dr. Spector's testimony. *Goebel v. Denver & Rio Grande W. R.R. Co.,* 215 F.3d 1083, 1087 (10th Cir. 2000) ("It is within the discretion of the trial court to determine *how* to perform its gatekeeping function under *Daubert*.…. The district court may also satisfy its

gatekeeper role when asked to rule on a motion in limine, on an objection during trial, or on a post-trial motion so long as the court has sufficient evidence….") (emphasis original).

## I. DR. BETENSKY'S DEPOSITION DESIGNATIONS DID NOT PLACE HER OPINION INTO EVIDENCE.

In Dr. Betensky's own words, her opinion is "the numbers on the page" of her report. Betensky Dep. Tr. at 129:3-4. The jury heard testimony from Dr. Betensky naming the statistical methods she used, Betensky Dep. Tr. at 250:10-251:3, and setting out her view that it "made sense" to use them, *id.* at 251:10-22. Dr. Betensky's deposition designations did not, however, tell the jury what "numbers on the page" were that were actually produced by those methods, *i.e.*, the substance of her opinion. And while those numbers are in Dr. Betensky's report, that document is not in evidence or admissible, *see Walsh Constr. Co. II, LLC v. Lexington Ins. Co.*, 2026 WL 1140255, at *5 (N.D. Ill. April 28, 2026); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 3, 2008) (collecting cases). Getting those results into evidence required testimony, either live or by deposition, that actually sets out the substance of Dr. Betensky's opinion. Her designations did not do that, and in fact, her deposition did not do it at all; while she discussed her methods, neither side elicited deposition testimony from her as to her results.

## II. DR. SPECTOR COULD NOT ACT AS A "SPOKESMAN" OR "MOUTHPIECE" FOR DR. BETENSKY BY PUTTING HER OPINION INTO EVIDENCE.

Dr. Betensky's opinion was presented to the jury only through the testimony of Dr. Spector. But it is both well- and long-established Seventh Circuit law that testifying experts cannot present as evidence—that is, essentially vouch for—the work of a non-testifying expert who works in a different discipline. *See Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty."); *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992) ("The architect could use what the engineer told him to offer an opinion within the architect's

domain of expertise, but he could not testify for the purpose of vouching for the truth of what the engineer had told him—of becoming in short the engineer's spokesman."). Even when an expert "may rely on hearsay in formulating his opinion," that hearsay "is not admissible for the truth of the matters asserted," because "Rule 703 was never intended to allow oblique evasions of the hearsay rule." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005); *see also Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 2005 WL 8178971, at *2-*3 (N.D. Ill. Sept. 8, 2005) (supplemental opinion). As explained in *Wilson*: "If for example the expert witness (call him A) bases his opinion in part on a fact (call it X) that the party's lawyer told him, the lawyer cannot in closing argument tell the jury, 'See, we proved X through our expert witness, A.'" *Wilson*, 965 F.2d 160, 173.

Given that Dr. Betensky was not "merely [a] gofer[] or data gatherer[] but exercise[d] professional judgment that is beyond [Dr. Spector]'s ken," *see Dura Auto.*, 285 F.3d at 613, Dr. Spector was not competent to get her opinion into evidence. Dr. Spector testified that he relied on Dr. Betensky "to decide what statistical methods should be applied," Trial Tr. at 839:9-11; *accord id.* at 839:5-7 (Dr. Spector "did not give any direction to Dr. Betensky as to the manner in which the meta-analysis should be conducted"). But "[m]any judgements are required in the process of preparing a meta-analysis," Betensky Dep. Tr. at 46:8-10 (agreeing with a quotation from the Cochrane Handbook), and Dr. Betensky, in turn, testified that she "did not rely on" Dr. Spector to "extract" the data from the studies he selected and instead performed that work herself, Betensky Dep. Tr. at 167:20-22. As the Court may recall, data extraction involves the exercise of expert judgment and is not a purely mechanical exercise. *See In re Abbott Labs. Prod. Liability Litig.*, 2025 WL 2381699, at *16 and *19 (N.D. Ill. August 15, 2025) (describing how Abbott's expert on

epidemiology and biostatistics extracted data from randomized controlled trials and commenting that criticisms of his method "are worthwhile topics for cross-examination").

Experts can testify based on the assumption that someone else's supporting expert opinion is correct—that is, they can *rely* on another expert's work—but that assumption must still be supported by admissible (and admitted) evidence. *Pecoraro v. Walls*, 286 F.3d 439, 446 (7th Cir. 2002) ("An expert witness must base his testimony on the facts. Not that he has to know the facts himself; they can be established *by other witnesses* and then used as the premise for his testimony." (emphasis added)); *St. Pierre v. Walls*, 297 F.3d 617, 631 n.22 (7th Cir. 2002) ("In order for the documents to be used by the expert they must first be admissible or the expert's testimony will lack foundation."). Conversely, if an opinion never makes it into evidence, then the testimony of other experts who rely on it will "rest[] on air." *Dura Auto.*, 285 F.3d at 615; *see also Loeffel*, 387 F. Supp. 2d at 809 ("If the underlying assumptions cannot be proven by *admissible*, competent evidence, the very nature of which would appear to require expert testimony, Mr. Dohmeyer's analysis of economic loss would have no evidentiary support and would be irrelevant.") (emphasis added). And this is especially so where, as here, "the soundness of the underlying expert judgment is in issue." *Dura Auto.*, 295 F.3d at 619; *accord Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 845 (N.D. Ill. 2018) ("Although experts… may generally rely upon studies conducted by other experts in forming their opinions, this is not the case when such studies involve discretionary expertise that the testifying expert lacks.") (citation omitted)), *aff'd*, 926 F.3d 409 (7th Cir. 2019). Indeed, even when "experts are permitted to rely on opinions of other experts," "the expert witness must in the end be giving his *own* opinion" and "cannot simply be a conduit for the opinion of an unproduced expert." *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 665-66 (S.D.N.Y. 2007) (valuation expert's testimony excluded where regression analysis he could not do himself

was outsourced to economist who did not testify, both because, as a matter of *Daubert*, valuation expert was not competent to present it and because allowing valuation expert "to relate the findings of the regression analysis at trial…would violate the hearsay rule.").[1]

Dr. Spector accordingly should not have been allowed to read Dr. Betensky's opinion, *i.e.*, "the numbers on the page," into evidence, and so his opinion drawing a causal inference from those numbers was improper. *Cf. Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 380 (S.D.N.Y. 2023) ("[W]hile Weisheit is certainly entitled to rely on deposition testimony to formulate an opinion, he must apply some methodology apart from quoting and concluding therefrom."). Particularly given that Mead Johnson raised these issues prior to Dr. Spector taking the stand, it is now appropriate for the Court to step in and strike Dr. Spector's testimony.

## **CONCLUSION**

For the foregoing reasons, Mead Johnson requests that the Court strike the testimony of Dr. Spector.

[1] It is also worth noting that, while it may be "typical" for an epidemiologist to "collaborate" with a statistician, Trial Tr. at 728:10-11, Dr. Betensky testified that her work in this case was not typical of what she normally does, *see* Betensky Dep. at 169:13-21 ("that's just not the nature of what I do"), and that she did not "collaborate" with Dr. Spector, *id.* at 170:3-12 (her work was "very different from being a collaborator of Dr. Spector"). These differences made it even more imperative that she present her own results to the jury.

Dated: August 24, 2026

By: */s/ Rachel M. Cannon*

Phyllis A. Jones
Nicole M. Antoine
Elizabeth T. Fouhey
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
202-662-6000
pajones@cov.com
nantoine@cov.com
efouhey@cov.com

Anthony J. Anscombe
Rachel M. Cannon
STEPTOE LLP
227 West Monroe, Suite 4700
Chicago, IL 60606
312.577.1270
aanscombe@steptoe.com
rcannon@steptoe.com

*Attorneys for Defendant Mead Johnson & Co., LLC*